WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

NOV 0 2 2007

ROBERT H. SHEMWELL, CLERK
BY _____
                    DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION


MARCUS C. FLOYD,                    CIVIL ACTION
          Petitioner               SECTION "P"
                                    NO. 05-CV-0355-M
VERSUS


WARDEN EAST CARROLL                 JUDGE DEE D. DRELL
DETENTION CENTER,                   MAGISTRATE JUDGE JAMES D. KIRK
          Respondent



REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Marcus C. Floyd ("Floyd") on April 18, 2005.  Floyd is contesting his 2001 conviction by a jury in the Louisiana Third Judicial District Court, Lincoln Parish, for armed robbery and his eighteen year sentence.  Floyd raises the following grounds for habeas relief:

> 1. Floyd was denied the right to confront his accusers because he was not provided with the necessary information to cross-examine Derrick Boone regarding any deals he made with the prosecutors to testify against Floyd, in violation of Brady v. Maryland.[1]
>
> 2. Floyd did not receive effective assistance of counsel in the preparation and trial of his case.
>
> 3. The trial judge did not mention the appropriate grid cell of the applicable guidelines at sentencing, causing Floyd to receive a harsher sentence.

---

[1] Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-07 (1963).

4. The State failed to establish that Floyd took anything of value belonging in Boone's possession or in Boone's immediate control by use of force or intimidation while armed with a dangerous weapon.

The Respondent answered the petition, alleging Floyd's claims, though exhausted and timely, are procedurally barred.  Floyd's habeas petition is now before the court for disposition.

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition.  Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court

proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding.  Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2).  <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts.  <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable.  A federal court cannot grant habeas relief simply by concluding that the

state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under Section 2254 unless the harmlessness determination itself was unreasonable. <u>Mitchell v. Esparza</u>, 540 U.S. 12, 124 S.Ct. 7 (2003). Moreover, in Section 2254 proceedings, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 113 S.Ct. 1710 (1993). Also, <u>Fry v. Pliler</u>, 127 S.Ct. 2321, 2328 (U.S. 2007). The Court should treat the error as if it affected the verdict, and the State bears the burden of persuasion as to the harmlessness of the error. <u>Fry</u>, 127 S.Ct. at 2328 n.3.

<u>Facts</u>

The facts of this case as set forth by the Louisiana Second Circuit Court of Appeal, as <u>State v. Floyd</u>, 36,442 (La. App. 2d Cir. 10/23/02), 830 So.2d 384, 386-387, writ den., 2002-2769 (La. 4/4/03),840 So.2d 1212, are as follows:

> "Derrick Boone, a full-time student at Grambling State University, reported that he was awakened by the sound of his doorbell on February 23, 2001, at approximately 8:00 a.m. Boone then went to the door and found Darion Butler and Marcus Floyd at the door. Boone put on his robe, returned to the door and proceeded to open it. At this moment, Floyd tried to force his way through the door. Butler helped Floyd force the door open when Boone almost

4

managed to close it. Floyd was armed with a revolver, and Boone and Floyd wrestled over the gun; however, Butler intervened and subdued Boone. Floyd and Butler first attempted unsuccessfully to bind Boone's hands behind his back with duct tape before using speaker wire. Floyd asked Boone for money and hit Boone with the gun. Next, Butler held Boone at bay by placing his knee in Boone's back as Floyd went to the back of the house. A gunshot was heard from the back of the house. Floyd then returned from the back of the house and stated, 'You think I'm playing,' and threatened to kill Boone. Floyd proceeded to hit Boone with the gun and the two men wrestled again. Butler intervened and put his foot on Boone before Boone started to turn the gun on the defendant. While Boone was lying on his stomach, he heard a door slam and saw Floyd walk out the front door.

"Butler took Boone to the living room and told Boone to lie on the sofa. Boone protested. Butler forced Boone into the bathroom at gunpoint. After a few seconds, Boone opened the bathroom door and called the police. Boone discovered that a gold bracelet and his cell phone were missing. The bracelet had been on the headboard in his bedroom and the cell phone had been on a small table near the front door. Butler was apprehended about one-quarter mile from Boone's residence with Boone's cell phone in his possession. Butler pled guilty to simple burglary in connection with this incident and was sentenced to serve eight years at hard labor, of which seven years were suspended.

"The jury found the defendant guilty of armed robbery. The trial court sentenced the defendant to serve 18 years at hard labor without benefit of probation, parole, or suspension of sentence."

<u>Law and Analysis</u>

<u>Procedural Bar</u>

The Respondent contends Floyd's petition is procedurally barred from habeas review by this court.

Federal habeas review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the

prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice.  To prevent federal habeas review, a state procedural bar must be independent of the merits of the federal claim and adequate in the sense of not being unconstitutional, arbitrary, or pretextual.  Lott v. Hargett, 80 F.3d 161, 164 (5th Cir. 1996).  Also, Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief.  Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997), cert. den., 523 U.S. 1125, 118 S.Ct. 1811 (1998).  Louisiana courts have regularly invoked the time limitation in La.C.Cr.P. art. 930.8 to bar untimely claims for post-conviction relief.  Glover, 128 F.3d at 902.

In the case at bar, Floyd's claims of insufficient evidence and excessive sentence were denied on the merits on direct appeal by both the Court of Appeals and the Supreme Court (Ex. Vol. 1, pp. 269, 283).  Floyd's claims of ineffective assistance of counsel and of a Brady violation were denied on the merits by the Court of Appeal and the Supreme Court (Ex. Vol. 2, pp. 421, 423).

Since the state courts considered and denied Floyd's claims on the merits, they are not procedurally barred.  Had the state courts

declined to rule on the merits of Floyd's claims and found he had defaulted his claims due to a regularly applied state procedural rule, such as untimeliness of his application for post-conviction relief, failure to file a pretrial motion to quash, or failure to object to the court's ruling at trial, then this court would be procedurally barred from considering his claims.   However, the state court considered and ruled on the merits of Floyd's claims, thereby exhausting Floyd's claims in the state courts and placing them squarely within the ambit of the habeas jurisdiction of this court.

Therefore, the merits of Floyd's habeas claims are properly before this court.

Ground No. 1 - Brady Violation

Floyd contends he was denied the right to confront his accusers because he was not provided with the necessary information to cross-examine Derrick Boone (the victim) regarding any deals he made with the prosecutors to testify against Floyd, in violation of Brady v. Maryland.   Floyd contends that, on or about December 29, 1999, Boone was arrested for possession with intent to distribute marijuana, Boone was charged with that offense on June 1, 2000, the armed robbery of Boone occurred on February 23, 2001, Boone's pretrial conference was continued, Floyd's trial took place on July 17-18, 2001, and then Boone's criminal proceedings were continued without date.   Boone asks this court to assume the existence of a

plea agreement due to the timing of the delays in the prosecution Boone's charges.

In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-07, 10 L.Ed.2d 215 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Wilson v. Whitley, 28 F.3d 433, 434 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754 (1995), citing U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985). In order to establish that evidence falls within the purview of Brady, a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Williams v. Whitley, 940 F.2d 132, 133 (5th Cir. 1991). The determinative question is whether the evidence was material; that is, whether there is a reasonable probability that, had the report been disclosed to the defendant the result of the proceeding would have been different. Wilson v. Whitley, 28 F.3d at 434, citing Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Spence v. Johnson, 80 F.3d 989, 994 (5th Cir.), cert. den., 529 U.S. 1012, 117 S.Ct. 519 (1996), citing Bagley, 413 U.S. at 682, 105 S.Ct. at 3383. The materiality of Brady material depends almost entirely on the value of the evidence relative to the other evidence mustered by the

state. Wilson v. Whitley, 28 F.3d 433, 439 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754 (1995). The prosecutor is not required to deliver his entire file, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. Wilson, 28 F.3d at 435.

When evaluating a claim of impeachment evidence withheld in violation of Brady, the court must consider the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony. U.S. v. Weintraub, 871 F.2d 1257, 1262 (5th Cir. 989). When the reliability of a given witness may well be determinative of guilt of innocence, nondisclosure of evidence affecting credibility falls with the general rule that suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. Giglio v. U.S., 405 U.S. 150, 153-154, 92 S.Ct. 763, 766 (1972), citing Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177 (1959). However, when the undisclosed evidence is merely cumulative of other evidence, no Brady violation occurs. Spence, 80 F.3d at 995.

In the case bar, Floyd has adduced no evidence of a plea agreement between Boone and the State. Instead, Floyd asks the court to assume there was a plea bargain from the fact that Boone's pretrial conference, scheduled to held prior to Floyd's trial, was continued without date and his criminal proceedings were continued

9

without date, on motion of the state, *after* Floyd's trial was concluded. However, Floyd has the burden of proving the existence of a plea agreement with Boone. A habeas petitioner has the burden of proving facts in support of his claim. Unsupported conclusory allegations do not warrant habeas relief. Uresti v. Lynaugh, 821 F.2d 1099, 1103 (5th Cir. 1987); Wilson v. Butler, 813 F.2d 664, 671 (5th Cir.), on rehearing, 825 F.2d 879, 881 (5th Cir. 1987), cert. den., 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988). Moreover, the fact that the prosecutors revealed their plea agreement with Butler (Floyd's co-conspirator), which was made in exchange for Butler's testimony against Floyd, tends to indicate there was no plea agreement with Boone (the victim).

Finally, it is noted that Boone, the victim of the armed robbery, gave evidence as to the facts of the crime as set forth above and identified Floyd and Butler as the perpetrators (Ex. Vol. 4, pp. 826-851). Butler, Floyd's co-conspirator in the crime, also testified against Floyd at his trial, giving substantially the same testimony as Boone and implicating Floyd (Ex. Vol. 4, pp. 862-871). Even if Floyd had been able to prove the prosecution had suppressed a plea agreement with Boone, since Boone's testimony was cumulative of Butler's, Floyd would not have been able to prove there is a "reasonable probability" that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

10

Floyd failed to carry his burden of proving the State had a plea agreement with Boone which was suppressed by the prosecution. Therefore, Floyd has not proven he is entitled to habeas relief due to a <u>Brady</u> violation.[2]   This ground for habeas relief is meritless.

## Ground No. 2 - Ineffective Assistance of Counsel

Next, Floyd contends he did not receive effective assistance of counsel in the preparation and trial of his case.  Specifically, Floyd alleges his trial counsel failed to adequately cross-examine Boone and Butler with their prior inconsistent statements and failed to ascertain what plea agreement the state may have made with Boone with regard to his pending charge.

To prevail on a habeas complaint of ineffective assistance of counsel a complainant must demonstrate that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.  A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. To make that determination the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence

_____

[2] In his supplemental brief (Doc. Item 28), Floyd argues for the application of 18 U.S.C. § 201(C)(2), Bribery of public officials and witnesses, to his case.  However, since Floyd was convicted in state court, federal statutes were inapplicable to his case.  Moreover, a plea agreement with a witness is not bribery.

supporting the verdict and evaluating the alleged failings of counsel in that total setting.   The court does not assess any alleged error in isolation.  In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence.  Jones v. Cain, 227 F.3d 228, 230 (5th Cir. 2000), citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).

The first component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  On the second component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases cited therein.

To determine whether a petitioner was prejudiced, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting.   The court

does not assess any alleged error in isolation.  In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence.  Jones v. Cain, 227 F.3d 228, 230 (5th Cir. 2000), and cases cited therein.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. Dowthitt v. Johnson, 230 F.3d 733, 743 (5th Cir. 2000), cert. den., 532 U.S. 915, 121 S.Ct. 1250 (2001), citing Strickland, 466 U.S. at 689.  Thus, the court's scrutiny of counsel's performance is highly deferential.  The court must be particularly wary of arguments that essentially come down to a matter of degrees, i.e., did counsel investigate enough or did counsel present enough mitigating evidence?  Those questions are even less susceptible to judicial second-guessing.  Dowthitt, 230 F.3d at 743, citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir. 1999).  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

13

Strickland, 466 U.S. at 689, 104 S.C. at 1065.

Floyd contends his trial counsel failed to cross-examine Boone and Butler on their prior inconsistent statements[3] as to the entry into the apartment, location of the parties, possession of the gun, Butler's battery, the demand for money and/or drugs, the speaker wire, possession of the gun, threats by Floyd, and the bedroom.

It is noted that Floyd's trial counsel questioned Boone generally about inconsistencies between his trial testimony and his statement to the police, to which Boone responded the inconsistencies were due to the fact that he gave his statement to the police two hours after the incident, when he was still "woozy," and that his memory of the event was clearer at trial than at the time he gave the statement to the police (Ex. Vol. 4, p. 852).

Floyd contends Boone testified he was asleep when Floyd and Butler showed up (Ex. Vol. 4, pp. 827-828), but in his statement to the police he said he was waiting for a friend to come over that morning when Floyd and Butler knocked on his door.  However, Boone did not tell the police he was waiting for anyone to arrive.  He

---

[3] "Prior inconsistent statement" is defined in the Louisiana Code of Evidence Art. 801(1) as:
   "(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
   "(a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness' attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement;...".

14

told the police his fianceé, with whom he was living, had left for work over an hour before (Ex. Vol. 1, pp. 40-41); that was also Boone's testimony at trial (Ex. Vol. 4, pp. 827-828).   Therefore, there was not an inconsistent prior statement with which to cross-examine Boone.

Next, Floyd contends Boone testified that he, Floyd and Butler all ended up in the kitchen, where Floyd pulled the gun, they duct-taped Boone's hands together, and then Floyd then went to the back of the apartment with the gun (Ex. Vol. 4, p. 855).   Floyd also contends Boone told the police that Butler joined the struggle in the kitchen, and that the struggle continued into the living room and then the bedroom, and that the men rummaged through his bedroom and the rest of the house (Ex. Vol. 1 p. 42).   These statements are not clearly or necessarily inconsistent, nor can Floyd show prejudice arising from the lack of cross-examination on this point.

Next, Floyd contends Boone testified at trial that Butler had his knee in his back and stayed with Boone while Floyd went to the back of the apartment with the gun (Ex. Vol. 4, p. 832), but that Boone told the police that Butler had the gun in his back when Floyd went into the bedroom (Ex. Vol. 1, p. 42).   Who had the gun at this point is not relevant; Floyd cannot show, and has not tried to show, how he was prejudiced by the lack of cross-examination on this point.

Floyd also contends Boone testified at trial that Butler never

15

hit him, implying Boone had done so, but told the police the "big guy" had hit him twice and kicked him in the head.  Floyd further contends that, at Floyd's trial, Butler denied ever striking or kicking Boone, and Boone specifically identified Floyd as the person who hit and kicked him (Ex. Vol. 4, pp. 829-834).  It is obvious that Boone's testimony was confused as to "big guy" or "little guy" but he maintained that Floyd, the guy with the gun, had hit him.  In his statement to the police, Boone identified Floyd ("little guy") as the person who hit him and Butler ("big guy") as the person who kicked him (Ex. Vol. 1, p. 42).  Again, this is irrelevant to the Floyd's conviction and he has not shown how the lack of cross-examination on this inconsistency prejudiced him at trial.

Next, Floyd contends that, although Butler testified that Boone was asked at least twice where the money and/or drugs were and that Boone finally told them to look in the closet, Boone did not mention these demands in his testimony.  Since there is only one statement involved, and Floyd is alleging by two different people, there is no "prior inconsistent statement" by the *same* witness which could have been used for impeachment purposes.

Floyd further contends Boone testified that, after the shot was fired, Floyd came back in to the kitchen, hit him with a gun, then snatched the speaker wire from his stereo and attempted to tie his hands back up.  However, Butler testified that, after Boone was

16

initially subdued and the duct tape failed, he grabbed some speaker wire and attempted to tie Boone's hands with it prior to Floyd's alleged entry into the bedroom.   Again, there is not a "prior inconsistent statement" by the same person.   This is simply conflicting testimony from two witnesses which, to whatever extent it may have presented a credibility issue, the jury was able to weigh and resolve in their deliberations.

Floyd contends Butler claimed he was never in possession of the gun, but Boone testified that Butler had the gun when he told Boone to lie on the couch, then told him to go into the bathroom. Again, these statements represent conflicting testimony by two different witnesses which the jury was able to hear, consider, and make a credibility determination on.

Floyd contends Butler testified Floyd stuck the gun "up the victim's butt," but Boone never mentioned this.   This does not represent a "prior inconsistent statement."

Floyd contends Butler denied ever entering Boone's bedroom, while Boone told the police that the struggle between the three men continued into the bedroom.   Against, this does not represent a "prior inconsistent statement."

Finally, Floyd contends his trial counsel failed to ascertain what agreements the State may have made with Boone in regard to his pending charge.   First, it is against noted that Floyd has failed to show there was, in fact, a plea agreement with Boone which was

not disclosed.  Second, the responsibility was not that of defense counsel to discover the plea agreement, but of the State's prosecutors to disclose it.  The prosecutor is required to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.  Wilson v. Whitley, 28 F.3d 433, 435 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754 (1995).  Therefore, if there was indeed a plea agreement made with Boone in exchange for his testimony at Floyd's trial which was not disclosed to Floyd's counsel, the fault would not lie with Floyd's counsel.

Floyd has not carried his burden of proving he had ineffective assistance of counsel at trial.  This ground for relief is meritless.

Ground No. 3 - Excessive Sentence

Next, Floyd argues the trial judge did not mention the appropriate grid cell of the applicable guidelines at sentencing, causing Floyd to receive a harsher sentence than he should have.

Even if the statutory requirements of La.C.Cr.P. art 894.1 were not followed during Floyd's sentencing, this alone would not entitle him to habeas corpus relief.  A state's failure to follow the mandates of its own statutes does not, per se, provide a basis for federal habeas corpus relief.  Hill v. Estelle, 653 F.2d 202, 205 (5th Cir.), cert. den., 454 U.S. 1036, 102 S.Ct. 577, 70 L.Ed.2d 481 (1981).  Federal review of state convictions is

18

confined to the narrow standards of due process.   <u>Smith v.</u>
<u>McCotter</u>, 786 F.2d 697, 700 (5th Cir. 1986); <u>Trussell v. Estelle</u>,
699 F.2d 256, 259 (5th Cir.), cert. den., 464 U.S. 853, 104 S.Ct.
168, 78 L.Ed.2d 153 (1983).   Moreover, in <u>Haynes v. Butler</u>, 825
F.2d 921, 923-24 (5th Cir. 1987), cert. den., 484 U.S. 1014, 108
S.Ct. 717, 98 L.Ed.2d 667 (1988), the court stated the following
standard by which a federal habeas court may review a state trial
court's sentencing decision:

> "Although wide discretion is accorded a state trial
> court's sentencing decision and claims arising out of
> that decision are not generally constitutionally
> cognizable, relief may be required where the petitioner
> is able to show that the sentence imposed exceeds or is
> outside the statutory limits, or is wholly unauthorized
> by law.   If a sentence is within the statutory limits,
> the petitioner must show that the sentencing decision was
> wholly devoid of discretion or amounts to an 'arbitrary
> or capricious abuse of discretion,' or that an error of
> law resulted in the improper exercise of the sentencer's
> discretion and thereby deprived the petitioner of his
> liberty."

The Louisiana Sentencing Guidelines were repealed by La. Acts
1995, No. 942, §3 (effective August 15, 1995).   See <u>State v.</u>
<u>Lennon</u>, 95-0402 (La. App. 4th Cir. 9/15/95), 661 So.2d 1047, 1050,
writ den., 95-3004 (La. 3/22/96), 669 So.2d 1222, cert. den., 519
U.S. 855, 117 S.Ct. 152 (1996).   Therefore, they were not in effect
at the time of Floyd's sentencing, and the trial judge did not err
in failing to mention them.

Since Floyd's eighteen year sentence is near the bottom of the
permissible sentencing range of ten to ninety-nine years, La.R.S.

14:64, and the sentencing judge articulated lengthy reasons for the sentence imposed (Ex. Vol. 5, pp. 1039-1045), Floyd's sentence was not constitutionally excessive.    This ground for relief is meritless.

Ground No. 4 - Sufficiency of the Evidence

Floyd argues the State failed to establish that he took anything of value belonging in Boone's possession or in Boone's immediate control by use of force or intimidation while armed with a dangerous weapon.[4]

Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  West v. Johnson, 92 F.3d 1385

---

[4] Armed robbery is set forth in La.R.S. 14:64:
    A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
    B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.
In order to prove defendant was engaged in an armed robbery, the state needed to show:
    1. Defendant intentionally took something of value belonging to another;
    2. The thing was taken from the possession of or immediate control of another;
    3. Defendant used force or intimidation in order to accomplish the taking; and
    4. Defendant was armed with a dangerous weapon.

20

(5th Cir. 1996), cert. den., 520 U.S. 1242, 117 S.Ct. 1847 (1997), citing Jackson v. Virginia, 443 U.S. 307, 322-326, 99 S.Ct. 2781, 2791-2792 (1979).   All credibility choices and conflicting inferences are to be resolved in favor of the verdict.   A determination of a factual issue made by a State court is presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. Ramirez v. Dretke, 398 F.3d 691, 693 (5th Cir. 2005), cert. den., 546 U.S. 831, 126 S.Ct. 51 (2005).

Floyd argues there was little physical evidence to support his conviction.   Floyd contends there was no blood seen or found on him or his clothing, there was no blood found in his friend's apartment bathroom, Butler was found splattered with blood, there were no identifiable fingerprints found, a bullet jacket and three pieces of metal fragments were found in Boone's living room but they were not shown to be connected to the robbery, and a gun powder test was not performed on Floyd's gun.   However, Butler and Boone, the co-conspirator and the victim, testified against Floyd.   Boone positively identified Floyd as one of the robbers (Ex. Vol. 4, p. 829), and Butler identified Floyd as his co-conspirator and testified as to their activities during the robbery (Ex. Vol. 4, pp. 862-871).   A jury may convict upon an accomplice's uncorroborated testimony.   State v. Matthews, 450 SO.2d 644, 646 (La. 1984).

Therefore, Floyd has not carried his burden of showing by clear and convincing evidence that he was not involved in the robbery.  When viewing the evidence in the light most favorable to the verdict, there is sufficient evidence to support Floyd's conviction for armed robbery, despite the dearth of physical evidence.  This ground for habeas relief is also meritless.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Floyd's petition for habeas relief be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND**

**LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 3$\not{0}$$^{th}$

day of October, 2007.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE